An appropriate order will issue.

**Donald FAULKNER**

v.

**WESTERN ELECTRIC COMPANY, INC.**

**Civ. No. C80–822.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 6, 1983.

Alford Wall, Roswell, Ga., for plaintiff.

Susan Cahoon, Edmund M. Kneisel, Kilpatrick & Cody, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This action is before the Court on the Plaintiff's Motion for Reconsideration of the Court's February 1, 1983 Order denying the Defendant's Motion for Judgment Notwithstanding the Verdict but granting Defendant's alternative Motion for New Trial. A new trial was granted because of the excessiveness of the $600,000 verdict. The Plaintiff now requests that the Court reinstate the jury's verdict or, in the alternative, enter an Order of Remittitur.

After Plaintiff filed the instant Motion, and after the Defendant responded, the Court requested that the parties brief the following three issues:

(1) Is remittitur a function of state or federal law?

(2) Under what circumstances may the Court remit?

(3) If the case is one where the verdict is subject to remittitur, how would the Court determine what the proper amount would be?

After consideration of all the submitted briefs, the Court concludes that it may properly order remittitur and that the $600,000 verdict should be reduced to the amount of $250,000 in lieu of granting Defendant's Motion for New Trial.

In the Eleventh Circuit the question of whether or not to grant a new trial or order remittitur in a diversity case is not governed solely by federal law, but instead presents a mixed issue of state and federal

law. *Warren v. Ford Motor Credit Co.,* 693 F.2d 1373 (11th Cir.1982); *Lowe v. General Motors Corp.,* 624 F.2d 1373 (5th Cir.1980).[1] State law governs the "substantive issue of whether the verdict in this case was excessive"; however, "a Federal standard applies to determine the . . . procedural question of whether a Federal District Court, sitting in diversity, should automatically grant a new trial on the basis of excessive damages." *Lowe,* 624 F.2d at 1383.[2] Consistent with this substance-procedure dichotomy, this circuit has ruled that the question of whether to allow a remittitur should be determined as a matter of federal law. *Warren,* 693 F.2d at 1379; *Lowe,* 624 F.2d at 1383.

Georgia courts do not recognize remittitur as a remedy where an unliquidated damages claim results in an excessive verdict. *McDonald v. McDonald,* 229 Ga. 702, 194 S.E.2d 429 (1972); *Redman Development Corporation v. Pollard,* 131 Ga.App. 708, 206 S.E.2d 605 (1974). Rather, the remedy is a new trial. The standard for granting or denying a motion for a new trial in such cases is simply the sound discretion of the trial judge. *See* Official Code of Georgia Ann. § 5–5–20 (Michie 1982), Georgia Code Ann. § 70–202 and cases cited thereunder.[3]

For the reasons set forth in the Court's Order of February 1, 1983, the Court, exercising a sound discretion, finds that the $600,000 verdict is excessive.

Under the applicable federal standard, this Court must grant a new trial or order remittitur where the award "exceeds the maximum limit of a reasonable range within which the jury may properly operate." *Warren,* 693 F.2d at 1380, quoting *Keyes v. Lauga,* 635 F.2d 330 (5th Cir.1981); *Bonura v. Sea Land Service, Inc.,* 505 F.2d 665 (5th Cir.1974); *Gorsalitz v. Olin Mathieson Chemical Corp.,* 429 F.2d 1033 (5th Cir. 1970), *modified,* 456 F.2d 180 (5th Cir.1972), *cert. denied,* 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972). Where the jury's excessive verdict results from passion or prejudice, however, the Court may not order remittitur. It may only order a new trial. *Edwards v. Sears, Roebuck and Company,* 512 F.2d 276, 281–82 (5th Cir.1975).

No feature of the instant case suggests that the excessive verdict resulted from passion or prejudice. Therefore, remittitur is proper.[4] Having reconsidered the matter, the remedy of remittitur is found superior to that of granting a new trial in the circumstances involved here. Namely, it appears quite unlikely that liability would be adjudicated against Plaintiff if the case were tried again; also, the case was well tried on both sides and the facts appear to have been fairly presented to the jury.

The Court now turns to the issue of the proper amount to which the jury's award should be remitted. The standard

---

1. Decisions of the Fifth Circuit handed down prior to September 30, 1981 are binding precedent unless overruled or modified by the Eleventh Circuit en banc. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209–10 (11th Cir.1981).

2. *Compare* 11 C. Wright & A. Miller, Federal Practice & Procedure § 2802 at 29–31 (1973) (question of whether to grant new trial or order remittitur is matter of procedure which should be governed by federal rules).

3. The Court rejects the Defendant's suggestion that the appropriate standard is set forth in Official Code of Georgia Annotated § 51–12–12 (Michie 1982), Georgia Code Annotated § 105–2015 (editorial change only). That statute provides:

     The question of damages is one for the jury; and the court should not interfere with

the jury's discretion unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias. The "court" referred to in this statutory section "is the [Georgia] Supreme Court [and the Georgia Court of Appeals]; and [the statute does] not have in immediate contemplation the power of the trial judge to review and approve or set aside a verdict upon a motion for a new trial." *Holland v. Williams,* 3 Ga.App. 636, 637–38, 60 S.E. 331 (1908).

4. Actually, even where passion or prejudice is shown, remittitur may still be proper where the Court concludes liability was properly established. *Edwards v. Sears, Roebuck & Co.,* 512 F.2d 276, 281–283 (5th Cir.1975). Although the Court did give a charge to the jury on comparative negligence, it has no difficulty in finding that the jury properly found Defendant was liable.

applicable in this Circuit is that of the maximum recovery which the jury could have properly awarded under the evidence and law applicable. *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033 (5th Cir. 1970), *modified*, 456 F.2d 180 (5th Cir.1972), *cert. denied*, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972).

█ Before turning to consideration of what the Court feels is the maximum possible award in this case, a brief recap of the facts is helpful. Prior to and on the date of the accident in question, Plaintiff worked as a long-haul trucker for Roadway Express. On the date in question (May 14, 1978) he was hauling a load in a trailer which had been loaded at the premises of Defendant Western Electric Company, Inc. The load consisted of large, heavy rolls of wire cable. The trailer had already been sealed when Plaintiff received it at the Roadway terminal. As Plaintiff was proceeding toward the expressway entrance, he applied the brakes. There was a jolt in the trailer; Plaintiff was thrown forward in his cab and experienced a whiplash type neck injury. He then saw that the front of the trailer was "bowed out" with one of the reels protruding. Plaintiff took the trailer back to the Roadway terminal.

Upon returning to the terminal, Plaintiff picked up another load which was ready to go and left on a trip. Later that evening he began experiencing discomfort in his neck; he went to a hospital emergency room and received some medication and a neck collar. He tried to drive on but was forced to abandon the trip shortly thereafter.

In the summer of 1978, Plaintiff began experiencing emotional problems and depression. This continued up through the time of trial in 1982. Defendant's position in this regard was that the psychological problems were a function of Plaintiff's April 1978 divorce, and personal problems in his second marriage including a June 1979 incident in which Plaintiff was arrested for allegedly molesting his minor step-daughter, the child of his second wife who he married on July 31, 1978. A criminal warrant was taken out by Plaintiff's second wife (to whom he is still married) against him based on this incident. She subsequently agreed to the charges being dropped.

Defendant introduced apparently reliable testimony indicating that Plaintiff had had some emotional problems before the May 1978 trailer accident; also, Plaintiff had an arthritic condition affecting his neck which predated the accident.

Plaintiff takes the position that Defendant's negligence is the root of all his present problems. He points out, apparently correctly, that he never missed work before the May 1978 accident.

Because of a combination of neck pain, dizziness, possible drug dependence, and apparent mental illness which followed the trailer accident, Plaintiff was unable to work during the period between the accident and the trial date in 1982. He went to see numerous physicians, whose diagnoses and prognoses varied considerably. Operations were performed on his cervical spine in December 1979 and December 1980. One of the physicians, a Dr. Dorsey, opined that Plaintiff had a 30% psychological impairment as of the fall of 1980. At the trial, Plaintiff's demeanor was such that the jury could well have concluded that his emotional problems were continuing in 1982.

At the trial Plaintiff gave limited, rather unremarkable testimony concerning physical pain and suffering. Allusion was made by him, and also by his wife, to his depressed state since the accident and the negative effect of the emotional problems on their marriage. Although the Court gave a charge to the jury to the effect that pain and suffering may be compensated in cases where the plaintiff suffers distress on account of his inability to work and labor, the Court does not recall that there was much testimony developing this theme. In fact, the Court's recollection is that Plaintiff did not request this jury charge.

Plaintiff showed that during the year prior to that in which the accident occurred, he had a net income of approximately $25,-

000. He did not introduce evidence of any medical specialists. He claimed that because of the psychological impairment allegedly resulting from the accident, he would be unable to work in the future. The jury was charged that they could potentially award damages in three categories: (1) damages for past lost wages, (2) damages for future lost earnings, if they found there was permanent injury, and (3) damages for pain and suffering.

It is very clear that a portion of Plaintiff's depression in the time frame following the accident stems from problems independent of those problems caused by the accident. In this regard, see Defendant's Exhibit 56B. Although it is difficult to ascertain exactly what percentage of Plaintiff's emotional problems cannot be attributed to the May 1978 accident, the Court feels it is reasonable to assign a substantial percentage. If the Court were to select the percentage it personally feels is correct, it would be a percentage over 50%. However, selecting a figure which gives the Plaintiff the benefit of every doubt, the Court assigns a 25% factor. In other words, the Court finds the jury could not have reasonably determined that less than 25% of the post-accident depression was attributable to sources other than the trailer accident.

For the first two years following the accident, the Court will allow Plaintiff to recover 100% of his lost wages, since during that period of time he apparently was experiencing limitations in physical movement. However, for the next two years only 75% of Plaintiff's lost wages will be deemed recoverable because of the intervention of the independent causes referenced. The total is thus $87,500.

The Court believes the jury could reasonably have found that Plaintiff's capacity to earn in the future will be limited by a certain amount of psychological impairment stemming from the trailer accident and its aftermath. Taking the medical testimony most favorable to Plaintiff, there will be a 30% psychological impairment. Again, however, the Court will permit Plaintiff to recover only 75% of that as stemming from the trailer accident. The proper calculation, applying the proper multiplier to reduce the award to present value, is as follows: $25,000 \times .75 \times .30 \times 11.154 = $62,742$.

The total of the award for past lost wages and for future diminished earning capacity is in the aggregate amount of $150,242 ($87,500 + 62,742).

The Court further determines that the maximum possible award for pain and suffering is in the range of $100,000, more or less.

In summary upon reconsideration, Defendant's Motion for New Trial is DENIED at this time. The Court ORDERS a conditional remittitur of the jury's verdict to the amount of $250,000. If Plaintiff refuses the remittitur, however, the Court will grant the Defendant a new trial.